### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES LINDSTROM, <br><br> Plaintiff, <br><br> v. <br><br> FEDEX GROUND PACKAGING SYSTEM, INC. <br><br> Defendant. | Case No. 2:21-cv-384 <br><br><br> JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES Plaintiff, James Lindstrom, by and through his attorney, Benjmain C. Ferris, Esq., of Manes & Narahari LLC, and files this Complaint alleging as follows:

### I. Nature of the Action

1. Plaintiff brings this Complaint to recover damages under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.,* the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.,* and the Americans with Disabilities Act ("ADA") 42 U.S.C. § 12101 *et seq.* Plaintiff alleges that he was retaliated against for using FMLA covered leave to treat his disability.

### II. Jurisdiction and Venue

2. This action arises under FMLA. This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

3. Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania. Therefore, this action is

within the jurisdiction of the United States District Court for the Western District of Pennsylvania, and the venue is proper pursuant to 28 U.S.C. § 1391(b).

4. Plaintiff filed a timely charge with the Equal Employment Opportunity Employment Commission ("EEOC") regarding his allegations under the FMLA on June 26, 2020 under charge number 533-2019-01237. *See Exhibit 1*.

5. Plaintiff was mailed Notice of Right to Sue from the ("EEOC") on January 21, 2021. This Complaint has been filed within ninety (90) days of the Plaintiffs receipt, thus making this action timely. *See Exhibit 2*.

### III. Parties

6. Plaintiff, James Lindstrom ("Plaintiff"), is an adult individual with a primary residence located at 3158 Bradbury Dr., Aliquippa, PA 15001.

7. Defendant, Fedex Ground Packaging System, Inc. is a foreign business corporation with a regular place of business located at 1000 Fedex Dr., Moon Township, PA 15108.

### IV. Facts

8. Plaintiff began working for Defendant on or about October 12, 2012.

9. Plaintiff's most recent position was as an Ops Analyst 3. He had previously held the position of Industrial Engineer.

10. In or around May 2018, Plaintiff's manager, Dayasha Love ("Love") presented Plaintiff with the "Fedex Ground Bravo Zulu Award" for going above and beyond to help provide a detailed analysis regarding the year-round purchase program, and as a result, helped save $500,000 in overpayments.

11. In or around August of 2019, Plaintiff had a meeting with Love. At this time, Love had praised Plaintiff for his performance and told he would be receiving a promotion to Ops Analyst 4 if he kept up the good work.

12. After this meeting, digital signage within Defendant's facility has begun to say "without mental health, there is no health."

13. During Plaintiff's next meeting with Love, he spoke to her regarding his mental health, specifically his anxiety disorder.

14. Love put Plaintiff in connection with Defendant's long term disability manager, who then suggested Plaintiff apply for Intermittent FMLA.

15. In or around early September of 2019, Plaintiff was approved for Intermittent FMLA.

16. On or around September 11, 2019, Plaintiff was once again awarded the Fedex Ground Bravo Award for going above and beyond.

17. The September 2019 award was presented by Michael Andrejco, an employee of Defendant, because of Plaintiff's work automating a 6-day report, eliminating the manual process which allowed the report to be received timelier. In addition, during Labor Day weekend, Plaintiff provided additional support that Saturday to Core Carriers, which reduced the risk of the carriers missing their pickups.

18. After being approved, Plaintiff used his Intermittent FMLA when he needed to address his mental health.

19. On or about December 10, 2019, had another meeting with Love.

20. Upon entering his one-on-one meeting, Love asked Plaintiff "what the hell is going on with you?"

21. Love informed Plaintiff that his attendance and performance has been terrible.

22. Love instructed Plaintiff to come up with an action plan to improve his performance and attendance before his next meeting with her the following week.

23. Following this meeting, Plaintiff checked MyTime, the Defendant's time keeping system to investigate the attendance issues Love had been speaking about.

24. With the exception of two days, all time taken off by Plaintiff had been properly approved FMLA time or previously approved Paid Time Off.

25. Prior to Plaintiff's next meeting with Love, Plaintiff informed her of his discovery.

26. Due to Plaintiff's approved days off, he did not need to come up with an action plan to improve his attendance.

27. On or about December 17, 2019, Plaintiff had his next one-on-one meeting with Love.

28. Plaintiff's action plan for performance was to focus more on his tasks.

29. During this meeting, Love places Plaintiff on a 60-day Performance Improvement Plan ("PIP") because his solution to his attendance and performance issues was not an action plan.

30. The PIP plan was written with one goal, to email Love at the end of the week with details of what Plaintiff had accomplished every day, and having a completion date of February 17, 2020.

31. Throughout the following 30 days, Plaintiff worked in accordance to his PIP and met the original required goals on a weekly basis.

32. Plaintiff continued using his FMLA approved time when needed to treat his mental health.

33. On or about January 17, 2020, Plaintiff spoke with Love regarding the status of his PIP.

34. Love informed Plaintiff that his PIP was not halfway through, and that he had another 60 days remaining.

35. Plaintiff informed Love that the PIP was 60 days, with an expiration date of February 17, 2020.

36. Love told Plaintiff that the PIP should have been 90 days, the previous PIP duration was an error. The completion date for the 90-day PIP was March 17, 2020.

37. Plaintiff reviewed his PIP and noticed that only one goal had a completion date of February 17, 2020 and that there were multiple goals to complete for the remaining time.

38. Due to the COVID-19 Pandemic, employees of Defendant began working from home, Plaintiff was among these employees.

39. Plaintiff's weekly meetings with Love continued, however, she began treating Plaintiff with less respect and appeared to harbor contempt towards him.

40. Upon the completion of Plaintiff's PIP, Love instructed Plaintiff to continue working on the PIP goals until he was instructed otherwise.

41. Plaintiff continued emailing Love at the end of the week, with details of what he had accomplished every day.

42. On or about April 6, 2020, Plaintiff used FMLA to treat his disability.

43. On or about April 8, 2020, Plaintiff attended a Microsoft Team meeting with Love.

44. During this meeting, at approximately 10:30 a.m., Love informed Plaintiff that this would be his last day employed by Defendant.

45. Prior to Plaintiff's use of FMLA time, he was awarded two awards for going above and beyond.

46. After Plaintiff was given the aforementioned awards and started using his Intermittent FMLA time, he was placed on a PIP by Love and told his performance had been terrible.

## COUNT I
**Retaliation in violation of the Family and Medical Leave act**

47. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

48. Defendant constitutes an "employer" within the meaning of the FMLA, as it employs more than twelve individuals.

49. Plaintiff constitutes an "employee" within the meaning of the FMLA and meets all established requirements in terms of average employment hours over the course of a year.

50. Plaintiff was diagnosed with anxiety, as a result, he accessed his legal right to protected leave under the FMLA to treat his disability.

51. Plaintiff was subsequently terminated due to his invocation of that right.

52. In order to prevail on a claim of retaliation under the FMLA, Plaintiff must prove that: (1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was casually related to his invocation of rights. *Lichtenstein v. u. of Pittsburgh Med. Ctr.* 691 F.3d 294, 302 (3d Cir. 2012).

53. The two main factors relevant with respect to establishing a casual link to satisfy the prima facie case of retaliation under the FMLA are: (1) timing and/or (2) evidence of ongoing antagonism. *Sabbrese v. Lowe's Home Centers, Inc.,* F. Supp. 2d 311 (W.D. Pa. 2004).

54. Plaintiff invoked his right to FMLA-qualifying leave when he applied and was approved for intermittent FMLA time to treat his anxiety.

55. Plaintiff's unjust termination was pretextual as the hostile and negative treatment towards him occurred when Plaintiff invoked his rights and began using his FMLA time as necessary.

56. Defendant's actions clearly give rise to blatant and unlawful retaliation in violation of the FMLA.

57. Plaintiff's unlawful termination is an adverse employment action.

## COUNT II
**Retaliation in Violation of the Americans with Disabilities Act**

35. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

36. Defendant constitutes as an "employer" within the meaning of the ADA.

37. Plaintiff was an employee with a disability within the meaning of the ADA relating to his anxiety disorder.

38. Defendant was notified of, and fully aware of, Plaintiff's disability and relevant hereto.

39. Defendant terminated Plaintiff, in whole or in part, because of his disability.

40. Plaintiff's unlawful termination is an adverse employment action.

41. As a direct result of Defendant's unlawful acts and omissions, Plaintiff suffered damages.

42. Defendant's acts and omission violated the ADA.

## COUNT III
**Retaliation in Violation of the Pennsylvania Human Relations Act**

43. The averments contained in the preceding paragraphs are incorporated herein as though set firth in length.

44. Plaintiff was disabled in that he suffered from an anxiety disorder and engaged in using protected time under the FMLA to treat his disorder.

45. Plaintiff was qualified to do his job and he simply needed time off to treat and manage his disability under the FMLA.

46. Defendant retaliated against Plaintiff on the basis of his disability and resulting need to take time off under the FMLA.

WHEREFORE, Plaintiff hereby requests that this honorable Court enter judgment in his favor, and against the Defendant, and award all damages available at law and in equity, including economic damages for back and front wages; compensatory damages for emotional distress; punitive damages as deemed appropriate by the court; reasonable attorney fees as determined by fee petition; pre-judgment and continuing interest; court costs; and any other such relief as the Court may deem just and proper.

Respectfully Submitted,

/s/ Benjamin C. Ferris
Benjamin C. Ferris, Esq.
PA ID: 327708
**Manes & Narahari LLC**
429 Fourth Avenue, Suite 300
Pittsburgh, PA 15219
(412) 626-5566 Direct
(412) 650-4845 Fax
bf@manesnarahari.com

## VERIFICATION

I, James Lindstrom, swear under penalty of perjury under the laws of the United States of America that the facts alleged in the foregoing Complaint are true and correct to the best of my knowledge.

_____
James Lindstrom